USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: February 14, 2017

# RELEASE AND SETTLEMENT AGREEMENT

This **RELEASE AND SETTLEMENT AGREEMENT** (this "Agreement") is entered into as of February 13, 2017 (the "Effective Date") by and between French Bull, LLC 161 East 61st Street, New York, New York 10065 ("French Bull"); Idea Nuova Inc., 302 Fifth Avenue, New York, New York 10001 ("Idea Nuova"); Benjamin Akkad, 1161 East 8th Street, Brooklyn, New York 11230 ("Akkad"); Nathan Accad s/h/a Nathan Akkad, 1150 East 8th Street, Brooklyn, New York 11230 ("Accad"); and Wal-Mart Stores, Inc., 702 S.W 8th Street, Bentonville, Arkansas 72716 ("Walmart"). Idea Nuova, Akkad, Accad, and Walmart are collectively referred to herein as "Defendants." Each of the Defendants and French Bull is herein referred to individually as a "Party" and collectively as the "Parties."

## RECITALS

**WHEREAS,** on or about February 25, 2016, French Bull commenced an action in the United States District Court for the Southern District of New York (Failla, J.) styled, *French Bull, LLC v. Wal-Mart Stores, Inc., Idea Nuova Inc., Benjamin Akkad a/k/a Benjamin Accad, and Nathan Akkad a/k/a Nathan Accad*, Docket No. 1:16-cv-01467-KPF (the "Action"). The Action remains pending at the time of the execution of this Agreement, but the Defendants deny the claims and causes of action in the Action;

**WHEREAS,** the Parties desire to settle the Action and any claims, disputes, and issues between French Bull and the Defendants;

**NOW THEREFORE,** in consideration of these recitals, and for the consideration set forth below, the receipt and sufficiency of which is hereby accepted and acknowledged, the Parties agree as follows:

## AGREEMENT

1.  **Payment by Idea Nuova:** On behalf of each Defendant and all Defendants, Idea Nuova shall make a $50,000 payment to French Bull (the "Settlement Amount") as follows: (i) $16,667 paid by February 3, 2017; $16,667 paid by April 3, 2017; and $16,666 paid by May 3, 2017. Payment of the Settlement Amount by Idea Nuova does not confess, and is not an admission or acknowledgement of, any Defendants' exposure, obligation, liability, or responsibility to French Bull in the Action or for any other reason, and shall not be interpreted as indicating or representing that any Defendant is responsible to French Bull in the Action for the Claims asserted therein, but is only made by Idea Nuova, on behalf of the Defendants, to settle and resolve the Action.

2.  **Inventory Sell-Off by Idea Nuova and Walmart:** Walmart and Idea Nuova shall have one-hundred eighty (180) days from the Effective Date to, without compensation, remuneration, disbursement, fee, payment, compensation, royalty(ies), or dispensation to French Bull, sell-off, make sales, sell, distribute, hand-off, deplete, trade, destroy, or dispose of any place in the world any inventory, products, bedding, or merchandise that incudes, displays, shows, or depicts any image, copyright, trademark, intellectual property, or depiction claimed in

the Action or otherwise claimed by French Bull to violate, disregard, or infringe upon any copyright, trademark, image, or intellectual property of or by French Bull, and such sales, selling, or commercial or business activity by Walmart and French Bull shall not violate this Agreement or French Bull's legal rights and shall not result in any payment to French Bull, but is specifically and expressly contemplated and authorized by French Bull. For the sake of clarity, Walmart and Idea Nuova may dispose of, sell, trade, distribute, deplete, or handle any inventory that the Action complains of as infringing, including but not exclusive the "Ziggy Design" (Registration VA 1-812-719, specifically, the "Ziggy Design") and all products, images, and/or designs referenced in or contemplated by the Complaint (including exhibits) in the Action, and also including any other design claimed by French Bull and any intellectual property of French Bull, without any royalty, payment, distribution, or compensation to French Bull and without any complaint or challenge by French Bull, such commercial activity known as the "Sell-Off Right." The commercial restrictions of Defendants contemplated by this Agreement exclude Defendants' rights to sell, distribute, trade, produce, handle, hold, purchase, acquire, or merchandise any products, designs, or merchandise not contemplated in the Complaint in the Action, and such restrictions exclude products bearing, incorporating, or including a 'chevron' or similar design that is not the Ziggy Design and that is not addressed or contemplated by the Action. After the Sell-Off Right expires, Defendants shall not be authorized to sell, trade, distribute, or merchandise "Ziggy Design" products as such design is specifically set forth in the Complaint in the Action, but Defendants shall not be prevented from selling, trading, distributing, displaying, holding, advertising, marketing, promoting, merchandising, or dealing in products, goods, inventory, or merchandise which incorporates, bears, uses, or includes any design that incorporates, bears, uses, or includes the chevron or similar design that is not specifically identified in the Complaint in the Action. For clarity, Defendants are not prevented from engaging in commerce in products that bear a chevron or similar design that is not the specific Ziggy Design.

3. **Stipulation of Dismissal with Prejudice**: Simultaneously with the execution and delivery hereof, the Parties shall execute a Stipulation of Dismissal with Prejudice pursuant to Fed. R. Civ. P. 41(a)(1)(A)(ii), dismissing the Action with prejudice and without costs to any Party in the form annexed hereto as Ex. A. Counsel to the Parties shall cooperate with each other to cause the Action to be dismissed with prejudice and without costs, and shall agree to execute any instrument necessary to cause such dismissal.

4. **French Bull Release**: Upon payment by Idea Nuova of the Settlement Amount, and in consideration of the covenants and agreements set forth in this Agreement, French Bull, on behalf of itself and its respective direct or indirect affiliates, members, shareholders, parent companies, subsidiaries, related business entities, managers, officers, directors, employees, agents, attorneys, heirs, executors, administrators, predecessors, beneficiaries, successors, acquirer or acquiring entity, and/or assigns, and any other persons or entities acting on behalf of French Bull, unconditionally and irrevocably releases, waives, discharges, and covenants not to sue (either directly or indirectly) the Defendants individually and collectively and/or any of the Defendants' respective direct and/or indirect affiliates, members, shareholders, parent companies, subsidiaries, related business entities, managers, officers, directors, employees, agents, attorneys, heirs, executors, administrators, predecessors, beneficiaries, successors and/or assigns, and any other persons or entities acting on behalf of the Defendants, from any and all claims, actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds,

bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages (including, without limitation, compensatory, consequential and/or punitive damages), judgments, extents, executions, demands, fees and liabilities, and including the Sell-Off Right, all and each of any kind whatsoever, at law or in equity (each, a "Claim," and collectively, "Claims") whether known or unknown, which French Bull ever had, now has or can, shall, or may have against each and every one of the Defendants individually or collectively and the Defendants' respective direct or indirect affiliates, members, shareholders, parent companies, subsidiaries, related business entities, managers, officers, directors, employees, agents, attorneys, heirs, executors, administrators, predecessors, beneficiaries, successors and/or assigns, and any other persons or entities acting on behalf of the Defendants, arising by reason of any matter, cause or thing whatsoever, from the beginning of the world to the Effective Date, including, without limitation, any Claims asserted in the Action or otherwise arising under or in connection with the Action or any commercial, business (private, public, or retail), or dealings by and between each of the Defendants individually or collectively.

      **A.**    French Bull irrevocably covenants to refrain from asserting, directly or indirectly, any Claim of any kind which is based upon any matter released, waived, or disclaimed by this Agreement, and shall indemnify each Defendant for any Claim asserted by French Bull after the Effective Date that has been released, discharged, or waived herein.

      **B.**    French Bull represents and warrants to the Defendants that it has not assigned or transferred any Claim (or any interest in any Claim) released or discharged by this Agreement.

      **C.**    The releases set forth in this Paragraph 4 shall be construed as broadly as possible.

      **5.**    **Governing Law; Submission to Jurisdiction:** This Agreement shall be governed by, and construed in accordance with, the laws of the State of New York, without regard to conflict of law provisions. Should any dispute arise under this Agreement, the Parties hereby submit to the exclusive jurisdiction of any state or federal court sitting in New York County, New York in connection therewith. The prevailing party in any dispute concerning this Agreement, as finally determined by a court of competent jurisdiction, shall be awarded by such court its or his legal fees incurred in successfully enforcing this Agreement.

      **6.**    **Interpretation:** This Agreement shall be construed as if the Parties jointly prepared this Agreement with the advice and assistance of counsel, and any uncertainty or ambiguity shall not be interpreted against any Party.

      **7.**    **Representations:** Each Party represents to the other Parties that it has consulted counsel and has full power and authority to enter into this Agreement and to carry out the transactions contemplated by this Agreement, and that all actions – administrative, corporate or otherwise – required to be taken by such Party to authorize the execution, delivery, and performance of this Agreement have or will be taken prior to the execution hereof. Each Party further represents that no consent, authorization or approval of any person or entity is necessary to authorize the execution or consummation of this Agreement (other than any such authorization or approval that shall be obtained prior to the execution hereof), and that this Agreement

148559.00601/105053878v.1

constitutes a valid and binding obligation upon such Party. Further, each Party acknowledges that he or it has fully read and fully comprehends the terms of this Agreement and that he or it is signing it knowingly and voluntarily.

8. **Merger:** This Agreement contains the entire understanding by and between the Parties concerning the matters addressed by this Agreement, and all prior agreements or understandings between or among the Parties with respect to the subject matter of this Agreement are merged into this Agreement. Each Party hereby represents and warrants to the other Parties that such Party has not, as an inducement to such Party's entrance into this Agreement, relied upon any representation, assertion, guaranty, warranty, collateral contract, or other assurance made by or on behalf of another Party or any other person or entity whatsoever, other than the express covenants, representations, and warranties set forth in this Agreement. Each Party hereby waives all Claims, whether known or unknown, arising out of and/or otherwise relating to any such representation, assertion, guaranty, warranty, collateral contract or other assurance. This Agreement does not pertain to or address any business obligation or requirement among the Parties that is not specifically covered by this Agreement.

9. **Modification:** This Agreement shall not and cannot be modified by any Party by any oral promise or representation made before or after the execution of this Agreement, and may only be modified by a writing signed by the Parties to which such modification or amendment applies or pertains.

10. **Severability:** If any provision of this Agreement is rendered unenforceable by reason of a final judgment of a court of competent jurisdiction, the remaining provisions shall remain in full force and effect, and such remaining provisions shall survive any claim to invalidate any part of this Agreement.

11. **Counterparts:** This Agreement may be executed in any number of counterparts, each of which shall be deemed an original and all of which together shall be deemed the same instrument.

12. **Recitals Incorporated:** The recitals to this Agreement are incorporated into this Agreement and constitute a part of this Agreement.

13. **Successors and Assigns:** This Agreement shall bind, and inure to the benefit of, the Parties and their respective heirs, executors, successors or assigns.

14. **Execution by Facsimile or PDF:** This Agreement may be executed by facsimile or Portable Document Format.

**IN WITNESS WHEREOF**, the Parties have caused this Agreement to be executed by their duly authorized representatives, where applicable.

*[signature page follows]*

148559.00601/105053878v.1

**FRENCH BULL, LLC**

By: _/s/ Jacqueline Shapiro_   February 2, 2017
Jacqueline Shapiro

**WAL-MART STORES, INC.**

By:   February 2, 2017
Twilla Brooks, Vice President

**IDEA NUOVA INC.**

By:   February 2, 2017
Margaux Levy, General Counsel

**BENJAMIN AKKAD**

   February 2, 2017

**NATHAN ACCAD s/h/a NATAHN AKKAD**

   February 2, 2017

**FRENCH BULL, LLC**

By: _____   January __, 2017

**WAL-MART STORES, INC.**

By: *[signature]*   January __, 2017
Twilla Brooks, Vice President

**IDEA NUOVA INC.**

By: *[signature]*   January __, 2017
Margaux Levy, General Counsel

**BENJAMIN AKKAD**

*[signature]*   January __, 2017

**NATHAN ACCAD s/h/a NATAHN AKKAD**

*[signature]*   January __, 2017

**SO ORDERED** February 14, 2017:

*[signature]*

Hon. Katherine Polk Failla, USDJ